No. 22460.

John A. Kunzman, William C. Kunzman, Ruth Kunz-
mann, Individually and as Executrix of the Estate of
Charles Kunzmann, deceased *v.* Union Pacific Railroad
Company, a Utah Corporation.
(456 P.2d 743)

Decided July 14, 1969.     Rehearing denied August 5, 1969.

Marilyn Traub Meadoff, Edward L. Kirkwood,
Harold L. Meadoff, for plaintiffs in error.

E. G. Knowles, Clayton D. Knowles, Robert G.

SMITH, F. J. MELIA, J. H. ANDERSON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.*

PLAINTIFFS in error will be referred to as the Kunzmans and defendant in error will be referred to as Union Pacific.

The action was commenced by the Kunzmans who alleged in their complaint that they were the owners of eighty acres of land in Weld county which was subject to a 400-foot right-of-way claimed by Union Pacific for railroad purposes. They alleged that from 1902 until 1957 the westerly 150 feet of the right-of-way had been leased for agricultural purposes and that in 1957 Union Pacific leased this westerly strip to the State Highway Commission of Colorado for highway use without paying compensation to them. They contend that the use of the land for highway purposes is not a use for railroad purposes and that it cannot be so used without compensation being paid to them.

The prayer of the complaint was for an adjudication of the rights of all parties and for a determination of the amount of compensation the Highway Department should pay the Kunzmans. The Highway Department originally named as a defendant agreed that if the court determined that the Kunzmans had an interest in the right-of-way it would negotiate for the payment of compensation to them and thereupon it was dismissed as a party defendant.

Union Pacific denied that Kunzmans have any interest in the land in controversy and admitted the leasing of the land for agricultural and highway purposes. It alleged that it acquired title to the strip of land occupied by the

*Retired Supreme Court Justice sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

right-of-way, 400 feet in width, as part of its right-of-way granted to a predecessor under the acts of Congress of July 1, 1862, 12 Stat. 489 and July 2, 1864, 13 Stat. 356, and that such title was subject only to an implied possibility of reverter in the United States of America. Union Pacific further alleged that it is the owner of the land in dispute; that ever since the original grant it and its predecessors have used the land for a railroad right-of-way and it intends to continue to do so; and that the leasing of a portion of the land for highway purposes did not interfere in any way with the operation of a railroad. The trial court entered judgment in favor of Union Pacific and the Kunzmans are here on writ of error to review that judgment.

There is no dispute in material facts, most of which were stipulated. The property in dispute consists of the right-of-way of Union Pacific across the east half of the southeast quarter of Section 6, Twp. 2 North, Range 66 West of the 6th P.M., Weld County, Colorado. The railroad was constructed across this land under certain Congressional Acts generally referred to as the "Pacific Railroad Acts." The Congress of the United States passed the first of the Pacific Railroad Acts on July 1, 1862 (12 Stat. 489) and amendatory Acts were later adopted effective on July 2, 1864 (13 Stat. 356), on July 3, 1866 (14 Stat. 79) and on March 3, 1869 (15 Stat. 324). The foregoing Acts were all offered and received in evidence as exhibits.

Union Pacific also placed in evidence a copy of the Congressional Act of October 22, 1919, which was admitted as Exhibit 6, and, in addition, a copy of the Act of May 25, 1920 was read into evidence. These statutes authorized in the one instance Union Pacific, and in the other instance all railroad companies to which grants of right-of-way through the public lands had been made by Congress, or their successors in interest or assigns, to convey to any state, county or municipality portions of their right-of-way to be used as a public highway or street, as provided in the Acts.

Union Pacific's predecessors complied with all the requirements of the Pacific Railroad Acts. A map of definite location was filed in 1869; a railroad was constructed pursuant to the Acts across Section 6; and a map of final construction was filed in 1872 by Union Pacific's predecessor, Denver Pacific Railway and Telegraph Company, all prior to 1886 the date of the issuance of a Receiver's receipt to the Kunzmans' predecessor in interest. The railroad has been continuously operated across the section since its construction by Union Pacific or its predecessors in the same location as originally constructed and constitutes a part of the main line of Union Pacific extending from Kansas City, Missouri, through Denver, Colorado, to a junction with the main line of Union Pacific in Wyoming at Cheyenne. At the time of the effective date of the Acts of July 1, 1862, 12 Stat. 489, and July 2, 1864, 13 Stat. 356, all of the land involved in this action was public land. Union Pacific succeeded to all the right, title and interest in and to the property in question granted to and acquired by any of its predecessors under and by reason of the above referred to Acts of Congress and is now the owner thereof. The Kunzmans' interest in the south half of the southeast quarter of Section 6 dates from the issuance of a Receiver's receipt in 1886, and the subsequent issuance of a patent in 1890 to the Kunzmans' predecessor. These events took place many years after the building of the railroad.

Following construction of the railroad, Union Pacific inaugurated the practice of making leases to the owners of lands adjoining the right-of-way covering the outer portions of it on either side of the tracks, and during most of the time since this practice was commenced the Kunzmans or their predecessors in interest have been lessees of right-of-way land on both sides of the tracks for agricultural purposes. At all times subsequent to 1957 the Kunzmans were lessees of right-of-way land on the easterly side of the track. On February 20, 1956, prior to the lease by Union Pacific to the State Highway Com-

mission, the Kunzmans conveyed the land abutting on the west side of the right-of-way to one Robert Heath, retaining only the minerals, and rights of egress and ingress, and are no longer owners of the property abutting on the west side thereof. Thus the interest of the Kunzmans is limited to the minerals and rights of egress and ingress.

As grounds for reversal of the judgment, argument is presented under five captions, the first three of which when read together add up to the contention that under the patent issued in 1890 to the predecessor in title of the Kunzmans, the Kunzmans received the fee title or servient estate in the 400-foot right-of-way strip including the mineral rights; that Union Pacific as the owner of an easement has the right to use the 400-foot strip for railroad purposes only, and that such use excludes the leasing of a portion thereof for highway use. This argument is based upon the premise that although the interest of Union Pacific in the right-of-way vested prior to the inception of any claimed interest of Kunzmans, since the patent issued to their predecessor described the area traversed by the right-of-way without mentioning its existence on the land, the fee or "servient estate" was thereby vested in the patentee, and that the Kunzmans now hold the same as successors in interest to such patentee.

■ Union Pacific argues in this connection that when its predecessor fully complied with the Acts of Congress hereinabove mentioned, and filed the map of definite location of the railroad, all of the 400-foot strip of land was thereupon removed from the category of public lands and the title thereto vested in Union Pacific's predecessor as of July 2, 1864, the effective date of the pertinent congressional act. It further asserts that the 1886 Receiver's receipt and the 1890 patent, upon which Kunzmans rely, had no application whatsoever to the 400-foot right-of-way strip. Union Pacific argues that the patentee obtained no title or interest of any kind in the area covered by the

right-of-way for the reason that the patent could only apply to lands in the public domain, and

"since the area encompassed within the right-of-way strip had been taken out of that category, the patent, which was issued long subsequent to the filing of the map of definite location and the construction of Union Pacific's railroad over and across said section, had no application."

Numerous decisions of the Supreme Court of the United States are cited by counsel in support of the foregoing arguments. The leading case on the point is *Northern Pacific Ry. Co. v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044, from which we quote the following:

"At the outset, we premise that, as the grant of the right-of-way, the filing of the map of definite location, and the construction of the railroad within the quarter section in question preceded the filing of the homestead entries on such section, the land forming the right of way therein was taken out of the category of public lands subject to preemption and sale, and the Land Department was therefore without authority to convey rights therein. It follows that the homesteaders acquired no interest in the land within the right of way because of the fact that the grant to them was of the full legal subdivisions.

\* \* \*

"\* \* \* In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. \* \* \*"

Additionally, it is Union Pacific's position that under the Acts above referred to it received a title to a 400-foot strip of land in the nature of a limited fee, subject only to a possibility of reverter in the United States of America in case of abandonment. Therefore any question with respect to the legality of the use of this right-of-way is a question only between Union Pacific and the United States of America. The point is made that Union Pacific

has never abandoned any portion of its right-of-way and that the leases to the county of Weld and to the State Highway Commission of a part thereof in no sense constituted an abandonment nor constituted an unlawful act, but were specifically authorized by Acts of Congress, and that in any event the Kunzmans, having no interest in the right-of-way, have no standing to challenge Union Pacific's actions with respect thereto.

Counsel for the Kunzmans argue that the decisions supporting the arguments advanced by counsel for Union Pacific have been modified, if not reversed, by the opinion in *United States v. Union Pacific Railroad Co.*, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693. In that case the litigants were the railroad and the United States. The issue involved the question of title to the oil and gas in the 400-foot right-of-way. That case did not involve the question as to whether the holder of a patent, issued long after the land had been traversed by a railroad right-of-way granted under congressional acts, took any interest in the right-of-way under the patent. We find nothing in that case which indicates any intent on the part of the Supreme Court of the United States to reverse its decision in *Northern Pacific Railway Co. v. Townsend, supra.*

The law was correctly applied by the trial court to the uncontroverted facts.

The judgment is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE DAY and MR. JUSTICE KELLEY concur.